IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COURTNEY D. ROARK, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. No. 20-1158-LPS |
| | : |
| JANELL OSTROSKI, et al., | : |
| | : |
| Defendants. | : |

Courtney D. Roark, Newark, Delaware. Pro Se Plaintiff.

Mengting Chen, Esquire, New Castle County Law Department, New Castle, Delaware. Counsel for Defendant New Castle County Government Center.

# MEMORANDUM OPINION

November 17, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Courtney D. Roark ("Plaintiff" or "father") proceeds *pro se* and has paid the filing fee. He commenced this action on August 31, 2020. (D.I. 2) While Plaintiff did not invoke a federal statute in his Complaint, the civil cover sheet cites 42 U.S.C. § 1983 as the statute under which he proceeds. (D.I. 2-1 at 1) Pending before the Court is Defendant New Castle County Government Center's ("NCC") motion to dismiss[1] and Plaintiff's emergency motion for injunctive relief, by which Plaintiff seeks full custody of his child. (D.I. 11, 12)

## II. BACKGROUND

This case concerns an order entered by Defendant Judge Janell Ostroski ("Judge Ostroski") in the Family Court of the State of Delaware in and for New Castle County. Judge Ostroski is sued in her official capacity. (D.I. 2 at 2) The Complaint also names New Castle County Government Center. (*See* D.I. 2)

In February 2020, the mother ("mother") of Plaintiff's child served him with a petition for custody. (D.I. 2 at 12) He answered the petition and sought custody/joint custody. (*Id.*) The Family Court noticed a case management teleconference for May 21, 2020. (*Id.* at 13) On May 11, 2020, Plaintiff filed a response to the notice in the form of a motion, stating that he did not consent to a teleconference, indicating that he did not give out his telephone number, requesting an "actual hearing," and moving for "equipment use." (*Id.*)

On May 20, 2020, Plaintiff filed a motion to dismiss and challenged jurisdiction. (*Id.*) The next day (*i.e.*, the scheduled hearing day), Plaintiff received notice that his two motions had been

---

[1] Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and (6) for improper service and for failure to state a claim upon which relief may be granted. (D.I. 11) Plaintiff did not file a response to the motion.

1

denied. (*Id.*) Seven days after the scheduled hearing, Plaintiff received Judge Ostroski's May 21, 2020 default order that gave the mother sole custody and primary residence of the child. (*Id.*)

Plaintiff alleges that Judge Ostroski violated his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution when she entered the default order on May 21, 2020. (D.I. 2 at 12) The Complaint seeks injunctive relief in the form of immediate relief from the May 21, 2020 order, reversal of the custody order, and custody of the child, as well as compensatory damages for gross negligence. (*Id.* at 8)

On November 12, 2020, Plaintiff filed a motion for emergency injunctive relief seeking immediate relief from Judge Ostroski's May 21, 2020 Order. (D.I. 12) Plaintiff explains that he filed an emergency ex parte motion in Family Court on October 5, 2020 that described the mother's drug and alcohol use on a certain date, and the motion was denied. (*Id.* at 1) Plaintiff further contends that on October 31, 2020, when Plaintiff was out of town, he received information that the mother was high and his daughter would be with Plaintiff's sister until Plaintiff returned. (*Id.*) The mother is currently in a rehabilitation center. Plaintiff contends that the current custody order is null and void due to the mother's conduct and that she has forfeited her right to parent the child. Plaintiff seeks sole custody and provision for the mother to make supervised visits. (*Id.* at 2)

## III.    ROOKER-FELDMAN DOCTRINE

Federal district courts are courts of original jurisdiction and have no authority to review final judgments of a state court in judicial proceedings.[2] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Power v. Department of Labor*, 2002 WL 976001 (D. Del. May 3, 2002). The Rooker-Feldman

---

[2]The Rooker-Feldman doctrine refers to principles set forth by the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Because the doctrine involves subject matter jurisdiction, it may be raised at any time by the court *sua sponte*. *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003).

2

doctrine is one that deprives federal courts of subject-matter jurisdiction over a case "brought by [a] state-court loser [ ] complaining of injuries caused by the state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

The Rooker-Feldman doctrine bars "lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004); *see also Ernst v. Child and Youth Services of Chester, Cty.*, 108 F.3d 486, 491 (3d Cir. 1997); *Khalil v. N.J. Div. of Child Protection & Permanency*, 594 F. App'x 88, 90 (3d Cir. 2015) ("[F]ederal courts lack jurisdiction over suits that are essentially appeals from state-court judgments."). In other words, "federal courts lack jurisdiction to review state court judgments where the relief sought is appellate review." *Walthour v. Child &Youth Servs.*, 728 F. Supp. 2d 628, 639 (E.D. Pa. 2010) (internal citations omitted).

It is apparent that Plaintiff's claims stem from the Family Court default custody order and that the alleged injuries and relief sought are linked to the state court decision. That is, Plaintiff's alleged injuries and relief sought are linked to the state court decisions. *See Ernst*, 108 F.3d at 491; *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) ("If the relief requested in the federal action . . . would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.") (internal citation and quotation omitted); *Marran v. Marran*, 376 F.3d 143, 149-50 (3d Cir. 2004).

Granting the injunctive relief sought in the Complaint's prayer for relief would be the functional equivalent of an appeal of a state-court custody determination. *See Walthour*, 728 F. Supp. 2d at 639 ("Plaintiff seeks injunctive relief to have his minor children returned immediately. Such relief would require this Court to find that the state court child custody determination regarding

Plaintiff's children is null and void. However, as explained above, the Rooker-Feldman doctrine bars this type of relief."); *Bonawitz v. Fosko*, 2014 WL 4165633, at *11 (M.D. Pa. August 20, 2014) ("It is . . . clear that Plaintiff [] is requesting this federal Court to review and overturn the decisions and Orders of the Luzerne County Court and to grant her injunctive relief in the form of full custody of her children. . . . Thus, we find that Plaintiff's claims in the present case are the 'functional equivalent of an appeal.' "); *Calipo v. Erie Cty. Office of Children & Youth Servs.*, 786 F. App'x 329, 331 (3d Cir. 2019) (applying Rooker-Feldman because "[r]estoring Calipo's parental rights . . . would require the District Court to invalidate the state-court's judgment").

In sum, (1) a default custody order was entered against Plaintiff; (2) he complains of injuries caused by the custody order; (3) that order was entered in May 2020, before this federal suit was filed in August 2020; and (4) Plaintiff seeks relief from the Order and, in essence, asks the Court to reverse it by awarding him proving him sole custody of the child. Thus, the Rooker-Feldman doctrine applies and the Court lacks subject matter jurisdiction with respect to the injunctive relief portion of the Complaint.

### B. Eleventh Amendment Immunity

Plaintiff attacks Judge Ostroski's actions in entering the default order, which he contends violated his constitutional rights. As relief, he seeks both injunctive relief (which, as explained, is not available, due to application of the Rooker-Feldman doctrine) and damages. To the extent Plaintiff is raising independent claims for violations of his constitutional rights in connection with the default custody order, these claims are not barred by the Rooker-Feldman doctrine. *See Calipo*, 786 F. App'x at 332. Nonetheless, such claims must be dismissed based (at least) on Eleventh Amendment immunity.

Plaintiff alleges that Judge Ostroski violated Plaintiff's rights under the Fifth and Fourteenth Amendments when she entered a default order awarding the mother sole custody and primary

4

residence of the child. (D.I. 2 at 12) The Complaint alleges in a conclusory manner that, in doing so, Judge Ostroski "abandoned her oath to uphold the constitution when she hindered father of his liberty by way of lack of due process, color of law, malicious use of process and fraud on the court." (*Id.*)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *see also Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009). Accordingly, 42 U.S.C. § 1983 claims for monetary damages against a state, state agency, or a state official in her official capacity are barred by the Eleventh Amendment. *See id.*

The State of Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007).

Eleventh Amendment immunity is extended to Judge Ostroski to the extent that Plaintiff seeks monetary relief against her in her official capacity. *See Lyman v. Philadelphia Court of Common Pleas Domestic Relations Div.*, 751 F. App'x 174, 178 n.4 (3d Cir. 2018).

To the extent Plaintiff intended to sue Judge Ostroski in her personal capacity, the claims are barred by reason of judicial immunity. A judicial officer in the performance of her duties has absolute immunity from suit and will not be liable for her judicial acts. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009); *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was

5

done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* (internal citations and quotation marks omitted). Here, the allegations relate to Judge Ostroski's actions as a judge. The Complaint's unsupported assertions fail to set forth any facts to show Judge Ostroski acted in the absence of jurisdiction. Therefore, even to the extent Plaintiff's alleged injuries do not flow from the state-court's judgment, Plaintiff may not recover damages from Judge Ostroski as a result of the doctrine of judicial immunity. *See, e.g., Lyman*, 751 F. App'x at 178 n.4 (concluding District Court correctly applied judicial immunity doctrine in dismissed defendant judge sued for damages). The claims against Judge Ostroski will be dismissed.[3]

### C. Claims Against New Castle County

NCC filed a motion to dismiss the claims against it for improper service and failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(5) and (6). (D.I. 11) Plaintiff did not file a response to the motion.

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

---

[3] Although only NCC has moved to dismiss, that motion – as well as Plaintiff's motion – has caused the Court to review the case. In doing so, the Court has determined whether it has subject matter jurisdiction. Having done so, the Court has determined that it lacks jurisdiction and that it must dismiss this action against all Defendants. There is no reason to delay providing this conclusion to the parties and taking appropriate judicial action. *See generally Dietz v. Bouldin*, 579 U.S. __, 136 S.Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

The Complaint names New Castle County Government Center as a defendant. It is not clear why NCC is a named defendant. There are no allegations directed towards it and Judge Ostroski is not employed by NCC.

A government entity may be liable for the actions of its employees only if the plaintiff identifies a policy or custom that amounts to deliberate indifference to individual rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The Complaint does not refer to any NCC employee or allege any policy or custom that caused the alleged constitutional violations. Absent any allegation that a custom or policy established by NCC directly caused harm to Plaintiff, his § 1983 claim cannot stand.

NCC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be granted. The Court finds amendment would be futile.

## IV. YOUNGER ABSTENTION

The Court next addresses whether it must abstain under *Younger* to the extent there are on-going proceedings as discussed in Plaintiff's motion for injunctive relief. (*See* D.I. 12) In his motion, Plaintiff explains that he filed an emergency ex parte motion in Family Court on October 5, 2020, which was denied. (D.I. 12 at 1)

The Court may raise the issue of *Younger* abstention *sua sponte*. *See O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994). A *Younger* abstention analysis requires courts to first analyze whether the parallel state action falls within one of "three exceptional categories:" (1) criminal prosecutions, (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (internal quotation marks and alteration omitted).

7

Proceedings in state court fall within the third *Sprint* category when they involve "orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 78. District courts in our Circuit have repeatedly held that child-custody cases fit "squarely into the third category of exceptional cases" and that "[c]ustody cases are particularly appropriate for *Younger* abstention." *Karl v. Cifuentes*, 2015 WL 4940613, at *4 (E.D. Pa. Aug. 13, 2015) (citing *Mikhail v. Khan*, 991 F. Supp. 2d 596, 627 (E.D. Pa. 2014)); *see also Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1094 (E.D. Pa. 2017) ("[T]he third category of abstention-worthy disputes has been applied only to a few exceptional types of cases . . . such as child custody proceedings.").[4]

In the instant case, the state order at issue that denied Plaintiff's ex parte motion relates to a child custody determination. It is unique to the state court's authority and obligation to ensure custody decisions in the best interests of children; it goes to the very heart of the custody determinations that state courts make and, therefore, falls within the third category of *Sprint*.

However, "[e]ven in an exceptional circumstance, three more showings – commonly referred to as the *Middlesex* factors – are required for *Younger* abstention." *Silver*, 802 F. App'x at 58-59 (citing *Middlesex Cty. Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982)). "*Younger* abstention is appropriate when: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) (internal quotation marks omitted).

---

[4] In a custody case with a different fact pattern, the Third Circuit held that a state-court order governing the conduct of the parties and counsel after a custody determination had been made was an "order uniquely in furtherance of a state court's ability to perform judicial functions." *Silver v. Court of Common Pleas of Allegheny Cty.*, 802 F. App'x 55, 58 (3d Cir. 2020). The Third Circuit said of that order that it "seeks to preserve the state court's power to further one of its uniquely judicial functions – promoting and protecting the best interests of a child whose custody had been previously adjudicated by the court." *Id.*

These three elements are satisfied here. First, Plaintiff is a party to ongoing state court proceedings. On October 6, 2020, he filed an emergency ex parte motion; a petition to modify custody order; a custody separate statement; and a custody, visitation, and a guardianship disclosure report. (D.I. 12-5 at 41, 52-61) The motion for the emergency ex parte order was denied on October 7, 2020. (*Id.* at 62) The October 7, 2020 order states: "This matter shall proceed in [the] normal course, with service to mother and providing mother an opportunity to respond. The attached text messages do not substantiate father's allegations." (*Id.*) It is clear from the order that the matter is ongoing.

The second element requires that state proceedings implicate important state interests. The second requirement is met because "[f]amily relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 427 (1979) (recognizing such interest in child abuse cases); *Lazaridis v. Wehmer*, 591 F.3d at 671 n.5.

Finally, the state court proceedings provide Plaintiff with an adequate opportunity to present his federal claims. *See Division of Family Services v. Cheryl B.*, 750 A.2d 540 (Del. Fam. Ct. Aug. 6, 1998); *Morgan v. Powell*, 659 A.2d 1243 (Del. Fam. Ct. Sept. 20, 1994).

Accordingly, with regard to the emergency motion for injunctive relief, the Court finds that it is appropriate to abstain under the principles of *Younger*.

## V. CONCLUSION

For the above reasons, the Court will: (1) dismiss the claims in the Complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine and based upon Eleventh Amendment immunity and judicial immunity; (2) grant the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and deny as moot the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) (D.I. 11); (3) abstain under the *Younger* abstention doctrine on the claims raised in the emergency motion

for injunctive relief (D.I. 12); and (4) direct the Clerk of Court to close the case. An appropriate Order follows.